# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CATHY H. HAYES**, | ) |
| Plaintiff, | ) Case No. 1:06CV00070 |
| v. | ) **OPINION** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | ) By: James P. Jones<br>) Chief United States District Judge |
| Defendant. | ) |

*Deborah K. Garton, Hensley, Muth, Garton & Hayes, Bluefield, West Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, and Michael McGaughran, Regional Chief Counsel, and Anne von Scheven, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I remand for further administrative consideration in light of new evidence based on the determination of disability in a subsequent application. The Commissioner found the claimant not disabled as of February 7, 2006. On a subsequent application, the Commissioner found her disabled as of February 8, 2006. I hold that this second determination constitutes new evidence justifying a remand.

# I

Cathy H. Hayes, the plaintiff, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2007) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

The plaintiff filed an application for DIB on December 31, 2003. The claim was denied initially and upon reconsideration. At the plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on October 20, 2005. The plaintiff was present and testified. By a decision dated February 7, 2006, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeal Council denied review on May 5, 2006, and the ALJ's opinion thus constitutes the final decision of the Commissioner in this case.

On May 18, 2006, shortly after the Appeal Council's ruling, the plaintiff filed a new application for DIB. On June 24, 2006, the plaintiff sought review in this court of the ALJ's adverse decision related to her first application for benefits. On July 18, 2006, the Commissioner determined upon initial consideration of the plaintiff's second application that she was disabled because of "osteoarthrosis and allied

disorders" with an onset date of February 8, 2006, the day following the ALJ's decision in the present case. (Pl.'s Ex. A.)

The plaintiff has filed a Motion for Judgment on the Pleadings and the defendant has cross-filed a Motion for Summary Judgment. Alternatively, the plaintiff has requested the case be remanded for further evaluation in light of the finding of disability on the plaintiff's second application. The issues have been briefed and fully addressed by the parties. The case is now ripe for decision.

II

The administrative record reveals the following facts. The plaintiff was forty-nine years old at the time of the decision by the ALJ. She has a high school education. Her past relevant work experience consists of being a cashier at a grocery store. The medical evidence includes records from three treating physicians who the plaintiff saw prior to and following her alleged onset of disability. The plaintiff has been treated for a number of medical conditions, including epilepsy, headaches, and complaints of pain related to osteoarthritis and degenerative joint disease.

David S. Grouse, M.D., treated the plaintiff for epilepsy, headaches, and carpal tunnel syndrome from January 2002 to January 2004. Dr. Grouse's treatment notes indicate that seizures the plaintiff had been experiencing in 2002 were being

effectively controlled by medication. Following an EEG on December 16, 2002, Dr. Grouse reported that the plaintiff's condition appeared "qualitatively better," due to her medication. (R. at 210-11.) The plaintiff was prescribed Keppra and Topomaz to control her seizures, and progress notes from Dr. Grouse in January 2004 reveal that she had been seizure-free since August 23, 2002

The plaintiff was also treated by Dr. Grouse for headaches and numbness in her hands. The plaintiff's headaches were considered to be "fairly well controlled." (R. at 205.) The numbness in the plaintiff's hands was diagnosed as mild to moderate carpal tunnel syndrome. By December 2003, the use of hand splints and physical therapy reduced the numbness and discomfort in the plaintiff's hands. By January 27, 2004, she reported that "[s]he's not having much pain in her hands, numbness or tingling." (R. at 205.)

The record also reveals that the plaintiff was treated by Anthony D. Rasi, D.O., a general practitioner, from March 2002 to July 2004.[1] In addition, Dr. Rasi submitted a residual functional capacity ("RFC") assessment, dealing with his patient's limitations resulting from fibromyalgia. The records from Dr. Rasi

---

[1] The ALJ partially rejected certain assessments attributed to Dr. Rasi because of questions related to the authenticity of his records. In light of the questions raised by the ALJ in her opinion, the plaintiff supplemented the record and provided the Appeals Council answers to interrogatories and a letter from Dr. Rasi affirming that the records were authentic and accurately conveyed his opinions regarding the plaintiff's condition.

-4-

document treatment for complaints of arthritis pain in the knees, ankles, hands, elbows, back, and neck; headaches; and some memory loss. The records indicate that Dr. Rasi diagnosed the plaintiff with a number of conditions including arthritis, degenerative joint disease, epilepsy, hypothyroidism, obesity, fatigue, fibromyalgia, and hyperlipidemia.

On March 19, 2002, the plaintiff was seen by Dr. Rasi for treatment. Dr. Rasi noted that the plaintiff had a limited range of motion in her knees due to degenerative joint disease. The swelling in the plaintiff's legs worsened after her workday as a cashier because she was required to stand to perform her job.

On September 2, 2003, Dr. Rasi opined in his treatment notes that although the plaintiff had been denied a claim for disability, she was unable to work, was unable to get around, and needed to use a cane for ambulation.

An assessment dated May 12, 2004, also presumably from Dr. Rasi, stated that the plaintiff was only able to lift less than ten pounds occasionally and stand and walk for two hours in an eight-hour work day. In addition, this assessment reflected Dr. Rasi's belief that the plaintiff would need to be absent from work approximately three times per month due to her health.

In July 2005, Dr. Rasi also completed a fibromyalgia RFC questionnaire that indicated that the plaintiff experience pain on a frequent basis which interfered with

her attention and concentration. Dr. Rasi opined that the plaintiff was only able to sit five minutes before needing to stand, stand for five minutes before needing to sit, and could sit and stand for less than two hours in an eight-hour workday. He further noted that she was limited to the use of a cane, and would require unscheduled breaks during the work day for up to fifteen to twenty minutes each. He was also of the opinion that the plaintiff could never lift and carry more than ten pounds and would need to be absent from work for more than four days per month due to her health condition.

On February 11, 2003, the plaintiff reported to Syed M. Ahmad, M.D., a rheumatologist, for a musculoskeletal evaluation. Dr. Ahmad noted that the plaintiff was experiencing pain in the joints of her upper and lower extremities, knees, ankles, shoulders, and lower back. A neurological examination of the plaintiff was found to be normal with normal muscle mass and strength and intact sensation. Dr. Ahmad found that the plaintiff had good grip strength and that the range of motion in her fingers and wrists were normal. The plaintiff also had full range of motion of the shoulders, spine, and hips, and limited flexon in the knees. Dr. Ahmad opined that the plaintiff had generalized osteoarthritis, chronic rheumatism/fibrosis, moderately severe osteoarthritis of the knees, chronic low back pain, and obesity. He

recommended that the plaintiff lose weight, take part in gentle exercise, and otherwise attempt to be as active as she possibly could.

The plaintiff saw Dr. Ahmad for a follow-up visit on February 25, 2003. The plaintiff underwent radiological studies that suggested she had osteopenia and mild osteoporosis. X rays of the plaintiff's lumbar spine were normal and X rays of her knees showed extensive degenerative changes. During this visit, Dr. Ahmad again recommended to the plaintiff that she attempt to lose weight and to begin participating in water aerobic exercises. The plaintiff elected against pursing any surgery to alleviate her knee problems, decided not to undergo physical therapy, and was afraid of taking any new medication.

On March 16, 2004, the plaintiff underwent a musculosketal examination conducted by Gary Craft, M.D. Dr. Craft noted that the plaintiff was fully ambulatory and could ambulate without an assistive device. An examination of her extremities revealed a full range of motion of all joints and grip strength and fine manipulation. The plaintiff was noted as having full motor power in both arms and forward motion of seventy degrees. Her walking abilities were noted to be fair and she could get on and off the exam table and move about the room without much difficulty. Dr. Craft found that the plaintiff had normal fine manipulation and sufficient grip strength to grasp as well as pick up a coin, a pin, a clip, and write. Dr. Craft opined that the

plaintiff was able to stand and walk for two hours in an eight-hour day and sit for up to six hours with routine breaks.

In August of 2003, Donald R. Williams, M.D., a state agency reviewing physician, examined the plaintiff's medical records and concluded that she remained able to perform the requirements of light work, including standing and walking for two hours and sitting for six hours in an eight-hour work day. He also determined that she could occasionally lift twenty pounds and frequently lift ten pounds. Dr. Williams noted that the plaintiff had no manipulative, visual, or communicative limitations.

On March 26, 2004, Richard M. Surrusco, M.D., a state agency physician, concluded from the medical records that the plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. He also concluded that the plaintiff could perform the requirements of light work, including standing or walking for two hours and sitting for six hours in an eight-hour day, with some postural limitations.

Based on the evidence before him, the ALJ determined that the plaintiff's assertions of debilitating pain were not consistent with the medical record. The ALJ rejected the opinions of Dr. Rasi as not supported by the other evidence and found that the plaintiff had the residual functional capacity to perform a significant range

-8-

of sedentary work. Based on the testimony of a vocation expert who testified at the hearing, the ALJ found that there were a significant number of jobs in the national economy that the plaintiff could perform and that she was thus not disabled within the meaning of the Act.

II

The plaintiff argues that the case should be remanded because of the new evidence that she has been awarded disability benefits in a subsequent application. A remand on the basis of new evidence is warranted only if the new evidence is material and there is good cause for its late submission. *See* 42 U.S.C.A. § 405(g). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). The evidence need not have existed during the period on or before the Commissioner's decision. *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003).

The dispositive questions here are whether the decision on the second application constitutes new evidence and if so, whether such evidence is material. The ALJ's denial of benefits occurred on February 7, 2006. The plaintiff subsequently filed another application. Under this application, the plaintiff was

-9-

found to be disabled upon her initial application and the onset date was determined to be February 8, 2006. The Commissioner based a finding of disability on the plaintiff's osteoarthrosis and allied disorders—a ground alleged by the plaintiff in her first application for benefits. Because the plaintiff has not submitted any medical records that served as the basis for the Commissioner's finding on her second application, it is unclear whether that finding of disability was based on any medical information independent of the plaintiff's first application.

Nevertheless, where a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence. *See Reichard*, 285 F. Supp. 2d at 734 (holding that an ALJ's "decision finding disability commencing less than a week after he first pronounced that Claimant was not disabled is new and material evidence."). It is not preclusive evidence as to a prior application, because a second application may involve "different medical evidence, a different time period, and a different age classification." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (affirming denial of remand).

While a precise date of disability onset based on a progressive disorder such as osteoarthrosis[2] may require a somewhat arbitrary determination, it is at least reasonable that evidence supporting an onset date one day removed may be persuasive. In light of the possible inconsistency between the first decision and the subsequent finding of disability related to the second application, this case should be remanded for further consideration. *See Bradley v. Barnhart*, 463 F. Supp. 2d 577, 580-81 (S.D.W. Va. 2006) (stating that the "Reichard [case] stands for the proposition that an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim."). Accordingly, the Commissioner's decision on the plaintiff's first application for DIB will be remanded for consideration of the finding that the plaintiff was disabled as of February 8, 2006.

III

For the aforementioned reasons, the case will be remanded to the Commissioner for consideration of the new evidence pursuant to the sixth sentence

---

[2] Osteoarthritis is a "noninflammatory degenerative joint disease." *Dorland's Illustrated Medical Dictionary* 1197 (27th ed. 1988).

of 42 U.S.C.A. § 405(g). I will defer ruling on the Motion for Judgment on the Pleadings and the Motion for Summary Judgment, pending the remand.

A separate order will be entered herewith.

DATED: June 7, 2007

 /s/ JAMES P. JONES
Chief United States District Judge